Hays' Administratrix, Plaintiff and Respondent, vs. Adam McNealy, Defendant and Appellant.

1. Judicial power and jurisdiction is not in its nature exclusive. The general rule is that like judicial authority is possessed by different Courts, and a grant of jurisdiction to one Court, even if it be of the same character as that possessed by another, does not repeal the first grant but renders the tribunals in which it is vested Courts of concurrent, not of exclusive, jurisdiction. Applying this principle to the act of 1844, vesting jurisdiction in the Circuit Courts to sell lands belonging to intestate estates to pay debts, it does not repeal an antecedent law vesting a previous like authority in the Judge of Probate.

2. Where the verdict of a jury is contrary to the law of the case, as applied to the facts admitted and as to which no question of credibility is involved, the verdict must be set aside.

3. Where the jurisdiction and power to hear a case depends upon the existence of a fact, that fact must be alleged or appear, or the proceedings are *coram non judice* and void. The act of 1833, under which the proceedings in this case were had, authorized the Judge of Probate to order a sale of real estate to pay debts "*after exhaustion of personal assets.*" This exhaustion was a fact potential for the jurisdiction of the Court. Without it the proceedings were void.

4. Under the grant of jurisdiction to the Judge of Probate in the Constitution of 1865, there was no original or inherent power in him to sell lands to pay debts. Lands were not assets until so declared by the Legislature. His power was conditional, is derived from legislative grant, and is a donation of special and limited jurisdiction.

Appeal from the Circuit Court for Jackson county.

This was an action brought under the Code by the respondent against the appellant, McNealy, and another. The respondent recovered judgment in the Circuit Court against the appellant for the sum of $980.90 and costs, and from this judgment the appellant appealed. The other facts necessary to an understanding of the case are stated in the opinion of the court.

*C. C. Yonge* and *W. H. Milton* for Appellant.

*Geo. S. Hawkins* and *J. F. McClellan* for Respondent.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This action is upon a promissory note given for land sold by an administrator, under an order of a Judge of Probate. A recovery is resisted upon the ground that the sale was void, that there was no consideration. The sale was had under the act of 1833, (Thomp. Dig. 202,) and the position taken here is that this act is repealed by the act of 1841, (Thomp. Dig. 203.) It is claimed that the question is settled by adjudication in the cases of Gilchrist vs. Filyau *et ux.*, 2 Fla., 94, and Union Bank vs. Powell's heirs, 3 Fla., 175. The question in the first case was whether an action of debt could be sustained in this State against the heir upon the bond of the ancestor. The ancestor was a surety upon a guardian bond. The decision of the question in no manner depended upon the repeal of the act of 1833. The court placed its conclusion upon the broad ground that lands were assets in this State. This was so under the one act as well as the other, and repeal was not a question involved in the controversy. The validity of no proceeding for the sale of lands under the act of 1833 was in question, and whether the act of 1841 changed the mode of sale authorized by the act of 1833 was not a question in

the case. It is also true as to the case of the Union Bank vs. Powell's heirs, 3 Fla., 175, that this question was not involved. The remark of the court in these cases, as to a change of "the mode" by which administrators may sell real estate for the payment of debts, was, therefore, mere *obiter ;* and upon principles universally recognized it is our duty to examine the question as *res integra.*

The act of 1833 declared lands assets, and *after exhaustion of personal assets,* authorized their sale by order or decree of the Judge of Probate, so far as necessarry to pay debts. The act of 1841 authorized a sale by the Circuit Court when the personal estate was not sufficient for the payment of debts, as well as where an equal, fair and beneficial division could not be made. Its title was "An act to authorize executors and administrators to sell real estate in certain cases, and to repeal certain acts therein mentioned." Acts of 1841, page 39. The act of 1833, then an existing act upon the same general subject, is not mentioned in the repealing clause. The question presented, therefore, is whether an act in 1841, vesting jurisdiction in the Superior Court to sell lands to pay debts upon an allegation of insufficency of personal assets to pay debts, repeals an act of 1833 vesting power in Judges of County Courts to sell land *after exhaustion of personal assets,* the act of 1841 having specific clauses repealing other acts, vesting like but other powers in the County Courts, but omitting any mention of the act of 1833.

The subject here acted upon by the Legislature is the jurisdiction of courts, and looking to the repeated expression of opinion by the Supreme Court of the United States and the several State courts as to the nature and character of jurisdiction, there is nothing in it which renders it inconsistent or exclusive. The rule may be stated to be that jurisdiction is concurrent, not exclusive. The exception is where it is exclusive. Looking to the organiza-

tion of our own. State system, we find an investiture of like jurisdiction. in several distinct courts. Our Supreme Court has in some instances concurrent jurisdiction with the Circuit Court, and it is only necessary to refer to our books of reports to find repeated instances of concurrent jurisdiction in the Circuit and County Courts. In the matter of judicial jurisdiction even in the State and Federal Governments, there are many cases of concurrent powers. 1 Kent Com. 426 to 446. The grant of jurisdiction to one court, without words of exclusion as to other courts having like powers, simply constitutes each tribunal courts of concurrent jurisdiction. Says Bronson, Justice, speaking for the Court of Errors of New York, (2 Hill, 164,) a grant of jurisdiction is not like a grant of property, which cannot have several owners at the same time. There is, I think, no instance in the whole history of the law where the grant of jurisdiction to a particular court, without any words of exclusion, has been held to oust any other court of the powers which it before possessed. The authorities are abundant, but it is certainly unnecessary to say more upon this subject, and especially is this true when the repealing clause of the last act in this case, although repealing other acts giving power to the County Courts, omits any mention of the act of 1833; and when the power granted in the first act is in case of *exhaustion of personal assets,* and in the subsequent act the power is granted *when the personal estate is not sufficient to pay debts.* The act of 1833 was not repealed. We have examined elaborately and carefully the several assignments of error herein made, so far as they are presented for consideration by the record, but it is unnecessary to refer to any question except that of the jurisdiction of the Probate Court in this proceeding.

One of the grounds of the motion for new trial, properly presented for our consideration herein, is that the verdict was contrary to the law and evidence. The defendant is-

sued as the maker of a note given in consideration of land sold under an order of the Probate Court upon application of an administrator. He pleads a want of consideration in this that such sale was void. There is issue of fact upon this plea. If, therefore, under the evidence it is plain and clear that there was no jurisdiction, then the sale was void, and the verdict should have been for the defendant.

The petition filed by the administratrix, upon which these proceedings were based, contains the allegation "that the assets belonging to the estate of the intestate are wholly insufficient to pay the debts due and owing by the said James Hays, deceased, that had been presented to her, and that in order to pay and discharge the debts it is necessary to sell the real estate belonging to said estate." This state- ment, that the assets (embracing as they do both real and personal estate in this State) of an estate are wholly insuffi- cient to pay debts due, is rather a suggestion of insolvency than an allegation that " the personal estate of the intestate is not sufficient for the payment of debts," or that " the per- sonal assets are exhausted." There is no pretence in this case that the proceedings necessary to give validity in case of sales of real estate belonging to insolvent estates have been had. The question here simply is, whether an allega- tion in a petition, " the assets are insufficient to pay debts, and that in order to pay debts it is necessary to sell the real estate," is sufficient to give the court jurdiction of a case where it is authorized " to sell real estate *after the personal estate is exhausted.*"

" The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action, if the petitioner states such a case in his petition that on a demurrer a court would render judg- ment in his favor, it is an undoubted case of jurisdiction." 6 Pet., 709–729.

In order to give jurisdiction of the subject-matter, this pe-

tition for the sale should have set out, either in words or substance, that the personal estate was exhausted. This fact at least should appear from the record. This was a jurisdictional fact necessary to be alleged or to appear in order that the court could authorize the sale by the administrator. (2 How., 338 ; 18 How., 502 ; 6 Porter, 262 ; 28 Ala., 164 ; 26 Ill., 179 ; 3 Ohio State, 494 ; 29 Ala., 210 ;. 1 Neb., 56–70 ; 2 Wall., 216 ; 3 Wall., 403 ; 41 Ala., 39–48 ; 1 Ala., 475 ; 6 Porter, 219 ; 10 Ala., 636.) Our general view as to the nature of proceedings of like character to this will be found in Price vs. Winter, (15 Fla., 103,) and we deem it unnecessary to repeat here what is there said. .

What has been said disposes of this question, unless there is something in the grant of jurisdiction to the judge of probate under the Constitution of 1865 which saves it from the operation of this principle.

The Constitution of 1865, Article V., Sec. 1, provided that " the judicial power of this State, both as to matters of law and equity, shall be vested in a Supreme Court, courts of chancery, circuit courts, and justices of the peace; *Provided,* The General Assembly may also vest such civil or criminal jurisdiction as may be necessary in corporation courts and such other courts as the General Assembly may establish ; but such jurisdiction shall not extend to capital cases." It also provided (Art. V., Sec. 8,) that " there shall be elected in each county of this State, by the qualified voters, an officer to be styled the judge of probate, to take probate of wills, to grant letters testamentary, of administration and guardianship, to attend to the settlement of the estates of decedents and minors, and to discharge the duties usually appertaining to courts of ordinary and such other duties as may be required by law, subject to the direction and supervision of the circuit courts as may be provided by law." It is thus seen that the power to attend to the settlement of estates of decedents, and to discharge the duties usually ap-

pertaining to courts of ordinary, are special powers granted by the Constitution to *an officer* to be styled the judge of probate. All of this, as a matter of course, was subject to action of the Legislature prescribing the method of settling such estates and discharging such duties. We do not propose here to enter into any general discussion looking to distinctions between courts of superior and general jurisdiction, and inferior or special and limited jurisdiction. We restrict ourselves to the precise question, and that is as to the constitutional grant of power so far as it concerns the real estate belonging to intestate estates, for a court may be a court of general jurisdiction for one purpose and special jurisdiction for another.

We are clear that this constitutional grant of jurisdiction did not invest the judge of probate with power to treat the real estate of intestate estates *as assets applicable to the payment of debts*. We are also clearly of the opinion that there is in the judge of probate no inherent original power of this character as to real estate, and this whether he is viewed strictly as an "officer" invested with special powers judicial in their character, or as the presiding officer of a court of limited and special jurisdiction under legislative grant. At common law, and under the English system, the spiritual courts had no jurisdiction over real estate or its proceeds, nor did the administrator have any title to the lands. Upon the death of the ancestor the fee vested in the heir. Under the constitutional grant, therefore, of power to settle estates, neither the judge of probate nor the administrator had any control over the real estate of the decedent, and, as at common law, real estate was not assets, and courts of ordinary of other States could not and did not treat it as assets, except through local legislation so declaring. It is evident that, independent of legislation in this State declaring land assets, it could not be the subject of sale to pay debts upon application by an administrator to the judge of probate. It

is thus apparent that all of the power of the judge of probate in 1866 to sell this real estate resulted from legislation declaring it assets, and giving him a special and limited power to authorize an administrator to sell it. He could only authorize its sale "*after exhaustion of personal assets.*" Until this exhaustion happened, there was no jurdisdiction or power in him to act. Until this happened, the administrator, viewed in reference to the probate court or judge of probate, had no interest in them but a naked authority to sell after he had exhausted the personal assets. The title was in the heirs, subject to be divested only by their voluntary act, or the decree of a court of competent jurisdiction, and that jurisdiction or power existed only upon the happening of the event stated. This was the primary fact that was potential for its jurisdiction. Without it what was done was void. *In this case the petition shows affirmatively that no such fact was even alleged.* The judge of probate had no constitutional or inherent power over land for this purpose. His power was conditional, is derived from legislative grant, and is a donation of special and limited jurisdiction.

Judgment reversed and new trial awarded.