**Petition of SOUTHEASTERN TELEPHONE CO.**

Docket No. 72220-TP. Order No. 5942.

Florida Public Service Commission.

November 27, 1973.

Lee L. Willis, II, and D. Fred McMullen of Ausley, Ausley, McMullen, McGehee & Carothers, Tallahassee, for the petitioner.

Robert L. Shevin, Attorney General, intervenor.

Chairman WILLIAM H. BEVIS, Commissioners WILLIAM T. MAYO and PAULA F. HAWKINS participated in the disposition of this matter.

BY THE COMMISSION.

*Order denying petition for reconsideration:* By Order No. 5906, dated October 25, 1973, this commission authorized Southeastern Telephone Company (hereinafter called the company) to increase its rates and charges in the amount of $198,018. The authorization to increase its rates was predicated upon an amended supplemental petition filed by the company, wherein it sought to recover that portion of the revenues related to the state corporate income tax as was necessary in order to keep its rate of return from falling below the minimum fair, just and reasonable rate of return last authorized the company.[1] Thereafter, the Attorney General, an intervenor throughout the course of these proceedings, filed a petition for reconsideration of that order seeking a delay in a decision on the amended supplemental petition on various grounds, each of which will be discussed hereinafter. Additionally, he has filed a brief in support of his petition wherein he expands on certain contentions made in the petition. An appropriate reply to said petition has been filed on behalf of the company.

First, the petitioner contends that because the question of the validity of Chapter 25-14 (in which Rule 25-14.02 is found) is now before the Supreme Court of Florida in five separate cases, the authorization of revenues under Rule 25-14.02 is "premature at best". We disagree. The issues before the court do not involve the mechanics used in applying the provisions of the so-called "sharing concept". Rather, as partially pointed out in the petition, they involve the broad questions of whether the rule itself is valid and whether the tax expense may be treated as an operating expense for rate making purposes in its entirety. Thus, the company will be entitled to no less than $198,018 should the validity of the rule and our treatment of the tax be upheld by the court; on the other hand, it will receive $336,832 in additional revenues in the event the position of the petitioners in those five cases is sustained. Therefore, our action cannot be characterized as "premature at best" since we are merely allowing the company to increase its rates by the minimum to which it is entitled, regardless of the outcome of the cases cited by petitioner.

Petitioner has also raised the following novel, but erroneous, argument is support of its first contention —

> "At common law a writ of certiorari operated to supercede [*sic*] the actions of any judicial or quasi-judicial function by a court, board or commission, State Beverage Department,

---

1. The minimum fair, just and reasonable rate of return was set at 8.31% by order No. 5660, dated February 27, 1973, in this docket.

et al v. Willis, 32 So.2d 580 (Fla. 1947). This of course acted to supercede [*sic*] the specific actions of the court being reviewed, the underlying reason for this was to prevent harm that might flow from the execution of an order that was wrong in fact or law." \* \* \*

"Petitioner therefore requests that the commission stay its initial order in this cause until the state's highest court makes a final determination as to the applicable law. The state and the utilities should not be forced into expending money in reliance upon an order which could well be superceded [*sic*] by the court's ruling." (Page 1 of brief in support of petition)

In essence, then, petitioner argues that because five other parties have filed petitions for certiorari in the Supreme Court of Florida seeking review of two orders issued in two separate proceedings,[2] the proceeding *sub judice* should be stayed as a matter of law. This argument not only contains erroneous statements of law, but it also reflects an incorrect interpretation of certiorari proceedings before the Supreme Court of Florida to review orders entered by this commission. We adopt as our reasoning the argument of the company with respect to this contention, as recited hereinafter —

"It is true that *where a writ was issued* in a common law certiorari proceeding, the writ operated as a supersedeas. However, at common law, it was not the mere filing of a petition for writ of certiorari that operated as a supersedeas, but the actual issuance of the writ. This is made clear by State Beverage Department, et al. v. Willis, 32 So.2d 580, 582 (Fla. 1947) (erroneously relied on by the Attorney General in paragraph 1 of his brief) wherein the Supreme Court of Florida said in regard to common law certiorari that: '. . . the granting of the *writ* operates as a supersedeas.' (Emphasis added.)

"The Attorney General entirely overlooked, in citing *Willis*, supra, that in common law certiorari there is no supersedeas until the writ is issued. No writ has been issued in any of the cases referred to by the Attorney General. Moreover, it should be pointed out that since July 1, 1957 the Supreme Court of Florida has had no power to issue a *common law writ* of certiorari to the commission. Dresner, et al. v. City of Tallahassee, 164 So.2d 208 (Fla. 1964), Ramagli Realty Co. v. Craver, 121 So.2d 648 (Fla. 1960). Proceedings before the Supreme Court of Florida to review commission orders are constitutional certiorari proceedings.

2. Docket Nos. 71342-EU and 72707-RULE.

"The status of a commission order is determined by applicable statutes and rules. In the absence of some specific statute, rule or order staying or suspending the operation of a rule, a rule promulgated by the commission is valid and continues in full force and effect. Simply stated, an order of the commission is not suspended pending review by the courts."

Thus, it is our conclusion that as a matter of law the filing of a petition for certiorari in the Supreme Court to review an order of this commission does not automatically stay the operation of the order.

Next, the petitioner contends as follows —

"2. Orders Nos. 5905 and 5906 err in treating the Florida corporate income tax as an ordinary item in determining the rate-of-return of the instant utility. Commission Rule 25-14 specifically states that its purpose is to assure a minimum fair, reasonable and just rate-of-return. By relying upon 'normalization' over the life of the utility, commission orders Nos. 5905 and 5906 do not provide for a *minimum* rate-of-return."

In support of its contention, the petitioner contends, inter alia, that the whole tone, spirit and intent of the rule is to require a minimum amount of the corporate tax to be treated as expense. We agree. And we have acted precisely in that manner. The petitioner goes on at some length in discussing the "normalization" concept which we have referred to on page four of Order No. 5906, supra. While this argument is not germane to the issues herein, it is apparent that the petitioner fails to understand what this concept means [3] since he states that normalization does not "accomplish an exact period-to-period matching of the tax and the revenue related thereto." However, normalization does in fact accomplish this very thing. Moreover, the petitioner's position outlined in his brief is contrary to the position taken by the American Institute of Certified Public Accountants, as discussed in Research Study No. 7 and Opinion 11, and fails to recognize the fact that the Tax Reform Act of 1969 prohibits our reverting back to "flowthrough" without the company's losing the right to use, for example, accelerated depreciation, ADR, and job development credits.

Next, petitioner again urges that we not conclude this docket until the actual tax liability is finalized either by audit by the Internal Revenue Service or through the running of the statute of

3. A thorough review of this concept is found in Order Nos. 2225, 2422, 3312, and 4489.

limitations, the latter of which requires seven years. This contention was disposed of in the order under reconsideration, and we again conclude this argument to be unreasonable and without merit.

Finally, because we have before us all of the information necessary to make an informed decision on this matter, including the well written briefs and pleadings of both parties, oral argument on the pleadings would serve no useful purpose.

It is therefore ordered that the petition for reconsideration of Order 5906 filed on behalf of the Attorney General of Florida be and the same is hereby denied.

It is further ordered that Southeastern Telephone Company be and it is hereby authorized to file with this commission, for our approval, appropriate tariff revisions, said revisions to become effective on all bills rendered on and after three days from date of this order.

It is further ordered that Order No. 5906 is reaffirmed in all respects.

By order of Chairman WILLIAM H. BEVIS, Commissioner WILLIAM T. MAYO and Commissioner PAULA F. HAWKINS, as and constituting the Florida Public Service Commission, this 27th day of November 1973.

*William B. DeMilly*
Administrative Secretary

Commissioner Hawkins dissents.